### SCRIBER et al. v. CHAFFIN.
### No. 5851.

Court of Appeal of Louisiana.
Second Circuit.

June 28, 1939.

Rehearing Denied July 17, 1939.

Writ of Certiorari and Review Denied October 30, 1939.

Bryan E. Bush, of Shreveport, for appellants.

Blanchard, Goldstein, Walker & O'Quin and Ben C. Dawkins, Jr., all of Shreveport, for appellee.

HAMITER, Judge.

A collision occurred on U. S. Highway 71 during the afternoon of April 2, 1937, between a Plymouth coupe owned and driven by Dr. R. G. Scriber, and a Dodge coupe operated and belonging to C. E. Chaffin. The cars were traveling in opposite directions when they collided. Personal injuries were sustained by each driver and both machines were badly damaged.

The highway at the place of the accident is straight and runs north and south. It is of concrete construction and has shoulders approximately 6 feet in width.

Scriber and the insurer of his car, the Home Insurance Company of New York, instituted this suit against Chaffin, asking that damages be awarded to them. They charge that the collision was caused solely by the negligence of defendant, and particularly aver that Scriber "was traveling south in his automobile on the Bossier-Coushatta road, Bossier Parish, Louisiana and when he reached a point at or near the Fullilove Gin about four (4) miles south of Bossier City ·the defendant herein, C. E. Chaffin, who was traveling north on said highway proceeding to drive his automobile to the left side of the highway and in the path of the automobile which your petitioner was driving on his right hand side of said highway with the right front wheel just off the pavement and where the defendant herein struck petitioner's right front part of his car just on the inside of the right front wheel with the left front wheel of the defendant's car and the car was going at such a high rate of speed when it struck petitioner's car that it turned over the hood of your petitioner's car and bounced after striking the highway about the center, off the highway to the east or left side of the highway from where your petitioner's car was."

Defendant denies that he was negligent. Alternatively, he pleads contributory negligence on·the part of Scriber, alleging, on information and belief, that the latter "was at the time and place of the accident either in a drunken or intoxicated condition or was suffering from a bad hangover, or was too sleepy to be able properly to handle the

operation of his automobile." In reconvention defendant asks judgment against the named plaintiffs for the damages suffered by him, asserting that the mishap resulted from the negligence and carelessness of Scriber. Specifically, he avers:

"At a point on said highway some three or four miles south of Bossier City in Bossier Parish, Louisiana, respondent noticed a car approaching him from the opposite direction at a rapid rate of speed of sixty miles per hour or more with its left wheels slightly on respondent's side of the black line on said highway. Respondent pulled his automobile over to his right-hand side of the road with both right wheels thereof slightly on the dirt shoulder. As the approaching automobile came within a few feet of respondent's car it suddenly swerved to its left and plunged into the left front portion of respondent's car before respondent had a chance or opportunity to pull further to his right to avert a collision."

The trial judge rejected the demands of all parties litigant. Written reasons for his decision were assigned.

Plaintiffs appealed from the judgment. An answer has been filed in this court by defendant in which he prays that the judgment be amended to the extent of allowing his reconventional demand, and that, in all other respects, it be affirmed.

Dr. Scriber left the City of Shreveport in his Plymouth coupe during the afternoon of April 2, 1937, on a business journey south to Taylortown, Louisiana. A guest accompanied him. He was in full possession of his mental faculties at the time, as the evidence conclusively shows, and was not experiencing the abnormal condition attributed to him in defendant's plea of contributory negligence.

It is his testimony that defendant's car was approaching on the west or his side of the highway a considerable distance away when he first noticed it; that he watched such machine until it entered the east or its proper traffic lane; that his next observation of it was when about 30 feet away and "they were right on the edge of the highway on my side", at which time he sounded his horn and applied his brakes; and that defendant then swerved the Dodge to the right for the purpose of going to the east side of the road, but was unsuccessful in avoiding the almost head-on collision. His further testimony is that he was traveling between 50 and 60 miles an hour; that the left front wheel of defendant's car struck the bumper and spring on the right side of his machine, or slightly to the right of the center of the radiator; and that the Dodge, after the collision, went into the air and over the radiator of his machine. The impact, he says, drove his car backward 3 or 4 feet, causing tire marks on the pavement, and spun it around.

Scriber's testimony is corroborated by that of his guest in all respects except as to the mentioned tire marks, the points of contact on the cars, and the course of the Plymouth after the impact. This witness states that the marks were not seen; that the cars came together at about the left front fender of each; and that the Plymouth, or Scriber's car, did not stop when struck but continued traveling south along the highway for 25 or 35 feet, spinning as it went.

Defendant's version of the accident is strikingly dissimilar to that furnished by Scriber. He and a guest passenger, both of whom lived in Longview, Texas, arose at 3 o'clock A. M., of the day in question and drove to Black Lake, south of Shreveport, on a fishing jaunt. A storm occurred in that locality during the preceding night and the usual good fishing was not experienced by them; so they ceased their efforts at noon, ate lunch, and began the journey to Longview via Shreveport. It is the testimony of said defendant that he was driving his Dodge in the right traffic lane at a speed of from 45 to 50 miles per hour, conversing with his companion about pecan orchards, when he observed the approaching Plymouth 300 or 400 yards away. In describing the movements of the cars, he says: "I never did cross the black line. I got up—I don't know how far away we were, it was fairly close, it seemed to me like maybe, oh, 100 feet or further, maybe 150 feet, and it just seemed like they began to just pull over. * * * He was gradually coming over and it got up so close. I hadn't thrown on my brakes but I had taken my foot off of the accelerator and I had both feet, one on the clutch and one on the brake, but I was still in the road. I hadn't done anything, hadn't begun to pull over. It was so close that Mr. Holloway says, 'He is not going to get over', and I whirled over and it just happened that quick." He further states that when the impact occurred his right front wheel was off the pavement on the east or his right side.

The testimony of the fishing companion is substantially in accord with that of defendant.

The only other person testifying as an eye witness to the collision was a negro man. The trial judge placed very little, if any, credence in his testimony, as the following observation in the written opinion reveals: "Avery George, a negro, says he saw the accident, and that defendant's car was over on its left hand side of the road. He says he was about 250 feet from the scene, but when asked to point out some object from the courtroom window 250 feet away, he pointed to a tree a great deal further than that, and I visited the scene of the accident and the house where he says he was is at least 500 feet from the scene."

There were numerous witnesses, including those mentioned above, giving testimony concerning the position of each car after the collision, and the condition of the highway and shoulders. This evidence, considered as a whole, tends to show that the Plymouth stopped in an upright position on the west side of the medial black line of the concrete, headed in a northwesterly direction. The rear wheels were on the pavement, while those on the front stood just off its western edge. Tire marks, which were not straight were 5 or 6 feet north of the Plymouth. Defendant's car, the Dodge, came to rest in a bottom-up postion on the eastern shoulder of the highway, northeast of the Plymouth, and fronted northwesterly or toward the concrete. A distance estimated at from 25 to 50 feet separated the two machines. Much dirt and broken glass were scattered over the area that lay between them. Most of the dirt, however, was approximately 2 feet east of the center line. The grass on the eastern shoulder for a distance of from 25 to 30 feet south of the Dodge was mashed down.

Examinations of the Dodge made by mechanics after the collision revealed that its left door was dented, and that the entire left front portion had suffered severe damage. In this last mentioned area, the bumper was bent slightly and detached from the frame, the fender mashed, the spring broken, the wheel partly crushed, and the frame bent. The left side of its cowl, which is the partition between the inside of the car and the engine compartment, contained three large dents. The right front portion and right side of such Dodge was unharmed.

Much damage resulted to the left front portion of the Plymouth, as a photograph in the record discloses, indicating that this was the point of contact. Particularly noticeable in said photograph is the condition of the frame, which was twisted and bent toward the left.

The physical facts above described do not support plaintiffs' contention that the left front wheel of the Dodge struck the right front part of Scriber's car "just on the inside of the right front wheel". If the accident had happened as thus contended, the entire front end of the Dodge would have been mashed backward instead of as above shown. Such facts indicate that the left front portion of each car came together, resulting in the Plymouth's reversing itself and stopping partly on the concrete, and the Dodge's skidding and coming to rest on the east shoulder. The overturning of the Dodge was caused by its wheels contacting the rough shoulder, while the smooth pavement was responsible for the Plymouth's remaining upright, the latter having whirled thereon. Also, it appears that said Plymouth was not traveling, as the petition alleges, close to its right or the west edge of the pavement. If that had been its course, undoubtedly the spinning would have carried it off both the highway and shoulder and resulted in its overturning. The tire marks above referred to, which were not straight, seem to have been caused by the Plymouth during its turning maneuver. Neither do we think that the defendant's car was near or off the eastern edge of the concrete when the impact occurred. Most likely its precipitation along and off the shoulder and into the adjacent ditch would have followed if such had been its position at the time.

In view of the fact that most of the dirt found was slightly east of the center line, and also of the other physical facts and conclusions related above, it is our belief that the collision occurred near the center of the highway. However, we are unable to satisfactorily determine from the record the exact place of contact in that locality.

The decision of the trial judge, which rejected the demands of plaintiffs and also those of defendant, was founded primarily on his conclusion that neither side had made out a case by a clear preponderance of the evidence. After thoroughly studying all of the evidence in the case, we are not convinced that he has committed error;

and consequently, his holding will remain undisturbed.

The judgment is affirmed.

TALIAFERRO, Judge.

I dissent from that part of the judgment rejecting the reconventional demand. The evidence, I think, fastens exclusive responsibility for the accident on the plaintiffs.